UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STATE OF LOUISIANA, | § | |
| | § | |
|      Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-1682 |
| | § | |
| ROWAN COMPANIES INC, | § | |
| | § | |
|      Defendant. | § | |

## OPINION AND ORDER

Pending before the Court are Defendant Rowan Companies, Inc.'s ("Rowan") Motions for Summary Judgment (Docs. 48, 67), as well as Plaintiff State of Louisiana's ("Louisiana") responses (Docs. 55, 73), Rowan's replies (Docs. 60, 74), and Louisiana's surreply (Doc. 77). Upon review and consideration of these motions, the responses, replies, and surreply thereto, the relevant legal authority, and for the reasons explained below, the Court finds Defendant Rowan's motions for summary judgment should be granted.

I. Background and Relevant Facts

This is a tort action in federal court pursuant to admiralty jurisdiction.  28 U.S.C. § 1333(1).  Defendant Rowan is a Delaware corporation with its principal place of business in Houston, Texas.  (Doc. 41 at 3.)  Rowan drills offshore oil and gas wells.  (Doc. 48 at 1.)  On December 2, 2003, Robert D. Marcy ("Marcy"), an employee of Rowan, filed a *qui tam* action in the U.S. District Court for the Eastern District of Louisiana alleging violations of federal environmental regulations on the Rowan Midland ("Midland") drilling rig.  (Doc. 48, exh. A.)  In his *qui tam* complaint, Marcy alleged that the crew on the Midland concealed violations of federal environmental regulations.  (*Id.*  at ¶ 2.)

Federal authorities investigated the allegations, revealing that the Midland's crew conducted abrasive blasting activities to clean the rig while in Port Fourchon, Louisiana from January to May 2004. (Doc. 55, exh. 5 at 16.)  During the blasting activities, the Midland's crew failed to take containment measures to minimize the discharge of spent blast media into the navigable waters of the United States in violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(c)(2)(a).  (*Id.*)  Similar blasting also occurred at a terminal in Sabine Pass, Texas on several occasions in 2002 and 2004, causing pollutants to leak into the Sabine River.  (*Id.*, exhs. 7–9.)

The government's investigation further revealed that the Midland's crew had, on multiple occasions from 2002 through 2004, discharged a mixture of hydraulic oil and water into U.S waters.  (*Id.*, exh. 5 at 16.)  The crew failed to report the discharge to the appropriate federal agency in violation of the CWA, 33 U.S.C. § 1321(b)(5).  (*Id.*)  The government learned that crew members discharged the oil and water mixture into the Gulf of Mexico at night to avoid detection.  (*Id.*, exhs. 1–4, 6.)  Moreover, the Midland's crew discharged garbage in violation of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a).  (Doc. 55, exh. 5 at 16.)

On August 16, 2007, the government prosecuted Rowan.  (Doc. 48, exh. 11.)  Rowan subsequently admitted to violations of the CWA, 33 U.S.C. §§ 1319 and 1321, APPS, 33 U.S.C. § 1908(a), and pleaded guilty to Failing to Notify of Waste Discharge into U.S. Waters, Discharging Garbage into U.S. Waters, and Knowingly Discharging a Pollutant into U.S. Waters. (Doc. 48 at 2–3, exh. C.)  On November 19, 2007, the U.S. District Court for the Eastern District of Texas entered judgment against Rowan.  (*Id.*)  The judgment indicated that Rowan's last offense ended on December 31, 2004.  (*Id.*)  Rowan paid $7,000,000 in criminal fines, $1,000,000 to five state government organizations for environmental training concerning CWA violations, and $1,000,000 to the National Marine Sanctuaries Foundation for preservation

projects off the coasts of Louisiana and Texas.  (Doc. 55, exh. 14.)

On January 3, 2008, the State of Louisiana, acting in its sovereign capacity and as *parens patriae* on behalf of the general welfare and economy of her citizens, initiated this suit against Rowan.  (Doc. 1.)  Louisiana sues for damages on Rowan's admitted violations of federal environmental laws that ended in 2004.  (Doc. 41 at ¶ 1.1.)  Specifically, Louisiana brings claims for negligence, trespass, public nuisance, and unjust enrichment arising from Rowan's commission of maritime torts and violations of federal environmental regulations.  Rowan moves for summary judgment.


II.  Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative

defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor" (emphasis in original)).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also, Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

III.  Discussion

A.  Laches and the Statute of Limitations

Rowan argues that the doctrine of laches bars Louisiana's maritime negligence claim. (Doc. 48 at 5–8.) Laches is an equitable doctrine that, once proved, serves as a complete defense to an action irrespective of whether the analogous state statute of limitations has run. *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980). A laches defense consists of three elements: (1) delay on the part of the plaintiff in filing suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense. *Nat'l*

*Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Texas*, 40 F.3d 698, 708 (5th Cir. 1994) (citing *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir. 1985)); *see also West Wind African Line, Ltd. v. Corpus Christi Marine Servs., Co.*, 834 F.2d 1209 (5th Cir. 1988) (applying the three elements to an admiralty case).

The Fifth Circuit applies an analogy rule to determine which party bears the burden of proof with regard to unreasonable delay and prejudice. *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980). Under this rule, the Court must determine which statute of limitations period is most analogous to the claim at hand. *Id.* Where the plaintiff files a claim within the analogous statute of limitations, the defendant bears the burden of proving unreasonable delay and prejudice to maintain a viable laches defense. *Id.* If, however, the plaintiff files suit after the analogous statute has run, then the plaintiff must prove the absence of prejudice or provide an excuse for the delay to defeat a laches defense. *Id.*

Rowan asserts that laches bars Louisiana's maritime negligence claim. Louisiana argues that the defendant shoulders the burden to prove unreasonable delay and prejudice because its claim was filed within the six year statute of limitations applicable to actions under the Federal Water Pollution Control Act, which it says is most analogous to the maritime tort claims at issue here. (Doc. 55 at 10.) In *U.S. v. P/B STCO 213*, however, the Fifth Circuit held that the federal statute of limitations period is six years for contract claims and three years for tort. 756 F.2d 364, 366 (5th Cir. 1985). Here, because Louisiana seeks to recover in tort, the federal statute of limitations for contract claims is not the most analogous, and a tort statute of limitations must apply. The alleged maritime torts in this case occurred on or before December 31, 2004 and Louisiana filed suit on January 3, 2008. Whether the court applies the three-year federal statute of limitations for torts or the one-year state statute of limitations for torts, Louisiana's maritime

tort claim is untimely.  Therefore, Louisiana bears the burden of showing that its delay was either excusable or non-prejudicial to quash the laches defense.

Rowan argues that the delay is inexcusable because Louisiana waited over three years from the last date of any underlying act to file suit.  (Doc. 48 at 7.)  However, Louisiana did not have actual notice of the alleged tortious activity until October 9, 2007, when the Department of Justice released information regarding the criminal action, and filed suit three months later, on January 3, 2008.  (Doc. 55, exh. 14.)  Because Louisiana sued soon after receiving actual notice, the delay is excusable.  Rowan further argues that Louisiana had constructive notice of the alleged torts when the government initiated criminal proceedings in August 2007.  Because Louisiana was not a party to those proceedings, this argument is unpersuasive.  Rowan also claims that Louisiana had constructive notice because a Louisiana State Trooper participated in the government's investigation in 2004.  (Doc. 77, exh. 4.)  The actions and knowledge of one state employee, however, are insufficient to put Louisiana on constructive notice of the alleged tortious activity.  Therefore, because Louisiana filed suit within three months of receiving actual notice of the underlying acts, its delay in filing suit is excusable.

Negligence claims in Louisiana have a one year prescriptive period.  La. Civ. Code Ann. art. 3492.  Trespass and nuisance claims are possessory actions.  La. Code Civ. Proc. Ann. art. 3655.  The prescriptive period for a possessory action is also one year.  *Id.* at art. 3658. Louisiana recognizes a discovery rule that tolls the statute of limitations until the owner of immovable property acquires, or should have acquired, knowledge of the alleged damage.  La. Civ. Code Ann. art. 3493.  The Fifth Circuit analyzes the discovery rule in article 3493 as congruent with the doctrine of *contra non valentem,* so that the prescription period does not run against a party who is unable to act.  *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 31 F.3d

870, 884 & nn.36–37.   The prescriptive period is suspended when the cause of action is not known or reasonably knowable by the plaintiff, even though the ignorance is not induced by the defendant.  *Id.*  Because Louisiana did not know or have reason to know of the alleged torts until October 9, 2007, this discovery rule applies.   Louisiana filed suit on January 3, 2008, three months after discovering the cause of action and therefore it is not barred by the prescriptive period.

B.  Negligence

Maritime negligence requires the plaintiff to demonstrate that (1) the defendant owed a duty to plaintiff; (2) the defendant breached that duty; (3) the plaintiff sustained an injury; (4) and defendant's conduct was the actual and proximate cause of plaintiff's injury.  *In Re: Cooper / T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991) (citing *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1995)).  Actual cause is "but for" causation.  *Thomas*, 759 F.2d at 448. To establish proximate cause, the plaintiff must prove that the negligence was a substantial factor in bringing about the alleged harm.  *Id.*  Louisiana has provided an undisputed factual record showing that Rowan polluted in and around Louisiana.  (Doc. 55, exhs. 5, 7–9.)  Although pollution is inherently harmful, Louisiana fails to establish actual or proximate cause of any damage.   In its First Amended Complaint, Louisiana asserts generally that as the direct and proximate result of Rowan's tortious conduct Louisiana suffered damage to its environment, wildlife, natural resources, and public land.  (Doc. 39 at 5.)  Louisiana establishes that Rowan owed it a duty of care and that Rowan breached that duty.  Louisiana, however, cannot establish that breach of that duty was the actual and proximate cause of the harm alleged without

providing some proof of actual harm.[1]  Accordingly, Louisiana fails to present a viable maritime negligence claim.

In Louisiana, there are five elements of a negligence claim: (1) the defendant had a duty to conform its conduct to a specific standard of care; (2) the defendant failed to conform its conduct to that specific standard of care; (3) the substandard conduct of the defendant was a cause in fact of plaintiff's injuries; (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries; and (5) the plaintiff suffered actual damages.  *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. Partnership*, 342 F.3d 416, 419 (5th Cir. 2003) (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So.2d 270, 275–76 (La. 2002)).  The fifth element requiring actual damages augments the standards of general maritime negligence.  Under Louisiana law, the plaintiff has the burden of proving its actual damages.  *See Andrus v. Trailers Unlimited (Roadmaster Custom Div.)*, 647 F.2d 556, 559 (5th Cir. 1981).  That is, the plaintiff must prove the loss it suffered.  *Id.*  Louisiana has offered no evidence of specific damage. General and conclusory statements about the harm that pollution causes are insufficient to establish the particular harm that Louisiana suffered.  *See U.S. v. Dixie Carriers, Inc.*, 736 F.2d 180, 186 n.11 (5th Cir. 1984) (citing *California v. S.S. Bournemouth*, 307 F.Supp. 922, 928–29 (C.D.Cal. 1969)).  In fact, Louisiana all but concedes this fact in its response to Rowan's motion for summary judgment.[2] Without evidence of damages, Louisiana cannot establish that Rowan's conduct was an actual and proximate cause of the alleged damage.

---

[1] The criminal charges to which Rowan pleaded guilty did not require proof of any actual harm to the environment and therefore the plea does not satisfy the damages requirement of the negligence claim in this civil action. 33 U.S.C. §§ 1319, 1321, and 1908(a).

[2] Louisiana states, "[T]here is no "practical" remedy available to [Louisiana] because of [Rowan's] intentional and successful efforts to conceal the full nature and extent of the contamination they caused . . . [T]he contaminant plumes have long since moved from their original location, precluding [Louisiana] from being able to prove the traditional damages available[.]"  (Doc. 55 at 24–25.)  A spoliation argument is inapplicable because, as Louisiana points out, the contaminant moved naturally from its original location.

C. Unjust Enrichment

The equitable principle underlying unjust enrichment is that no party should be enriched at the expense of another. *Corbello v. Iowa Prod.*, 850. So.2d 686, 712 (La. 2003). Maritime unjust enrichment claims are cognizable when based on a maritime contract. *See Exxon Corp. v. Central Gulf Lines, Inc*, 500 U.S. 603, 610 (1991). A quasi-contract arises when there is a duty imposed by law in the absence of a promise. *P/B STCO 213*, 756 F.2d at 371. The Fifth Circuit recognizes that the primary duty to clean up pollution rests with the polluter. *Id.* at 369. As such, unjust enrichment claims based on quasi-contractual principles are a legitimate means to secure restitution for the cost of cleaning up another's pollution. *Id.* at 371 (explaining that "[t]he idea here is that if money be expended by one person on behalf of another the law will impose a duty to compensate on the person thereby benefited, if on general principles of equity the money should have been paid in the first instance, in whole or in part, by him rather than by the plaintiff."). Where the plaintiff seeks restitutionary damages, a maritime unjust enrichment claim based on quasi-contractual principles is cognizable. *Id.* (recognizing "[a] quasi contractual obligation to reimburse a plaintiff, who has performed a duty, at his own expense . . . where the performance of the duty was necessary to preserve the public's welfare and safety.").

Louisiana argues that Rowan was unjustly enriched by its clean up of Rowan's unlawful pollution. In Louisiana, unjust enrichment claims must meet five prerequisites: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) the action will only be allowed when there is no other remedy at law, *i.e.*, the action is subsidiary or corrective in nature. *Gallant Investments, Ltd. v. Illinois Cent. R. Co.*, 7 So.3d 12, 18 (La. App. Ct. 2009) (citing *Minyard v.*

*Curtis Products, Inc.*, 251 La. 624, 651–52 (1968)).   The availability of a remedy at law precludes recovery in equity.   *Id.*   Delictual causes of action such as intentional misconduct and negligence are examples of at law remedies that bar an action in equity.   *Mouton v. State*, 525 So.2d 1136, 1143 (La. App. Ct. 1985).

Because the at law remedies Louisiana asserts are not viable, an at law remedy does not bar recovery in equity.   Louisiana, however, cannot establish that Rowan's actions caused it any impoverishment.   Louisiana does not claim that it ever performed Rowan's duties or paid for the clean up costs of Rowan's pollution.   As evidence that Rowan was enriched, Louisiana provides one expert's opinion on how much money Rowan saved by polluting.   (Doc. 48, exh. D.)   That opinion, however, does not establish that Louisiana was impoverished.   The maritime unjust enrichment claim is not viable.

Louisiana also asserts that water contamination, degradation of water quality, and general harm to the environment counts as impoverishment.   (Doc. 55 at 24.)   Other than relying on the tautology that water pollution is harmful, Louisiana does not provide any specific evidence of actual environmental impact capable of establishing a causal connection between its impoverishment and Rowan's enrichment.

Moreover, it is unclear whether Rowan was enriched.   Rowan paid $7,000,000 in criminal fines, $1,000,000 to five state government enforcement organizations, and $1,000,000 to the National Marine Sanctuaries Foundation and the Stetson Banks National Marine Sanctuary.   (Doc. 55, exh. 15.)   Some of the fines that Rowan paid went to nonprofit organizations that benefit Louisiana.   The unjust enrichment claim is not viable.

D.  Public Nuisance

A nuisance is a nontrespassory invasion that impairs the use and enjoyment of another's

land.  *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 289 (5th Cir. 2001).  A public nuisance involves an unreasonable interference with a right common to the general public.  *Id.* (citing Restatement (Second) of Torts § 821B).  To determine whether a defendant's conduct amounts to a public nuisance, courts consider whether the conduct involves a significant interference with public health, safety, peace, comfort, or convenience.  After establishing a public nuisance, a plaintiff can obtain an injunction or damages.  *Id.* at 291 (citing Restatement (Second) of Torts § 821C).  To recover damages, a plaintiff must have suffered significant harm different in kind from that suffered by the general public.  *Id.*  Recovery, then, is available to a plaintiff who has sustained particular damages, defined at common law as substantially greater than the presumed-at-law damages suffered by the general public.  *Louisiana, ex rel. William J. Guste, Jr. v. M/V Testabank*, 752 F.2d 1019, 1030 (5th Cir. 1985).[3]

Although pollution is a significant interference with public health and safety, Louisiana fails to establish that it suffered significant harm different in kind from the general public.  Louisiana's assertion that pollution is inherently harmful does not reach the particular damages threshold that common law public nuisance requires.  Because Louisiana cannot establish that it suffered any actual harm, it cannot establish that its territory or citizens suffered any particular damages substantially greater than the general public.

E.  Trespass

Trespass requires the unlawful physical invasion of the property or possession of another.  *Lacombe v. Carter*, 975 So.2d 687, 689 (La. App. Ct. 2009).  In an action for trespass, a plaintiff

---

[3]  Rowan asserts that Louisiana's claim for public nuisance fails because it does not fit within the requirements of Louisiana Revised Statutes 13:4713.  (Doc. 48 at 14.)  That statute, however, is not applicable to Louisiana's cause of action.  While the statute uses the term public nuisance, it deals exclusively with the procedures to enjoin specific criminal activity.  *See* La. Rev. Stat. § 13:4711 (listing the following as criminal activity: crimes of violence, weapons charges, drug charges, obscenity, and prostitution).  Here, Louisiana clearly seeks damages based on a common law theory of public nuisance.

must show damages flowing from the act of trespass with either direct or circumstantial evidence.  *Id.*  Moreover, one who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience.  *Id.* Louisiana provides one expert's opinion on how much money Rowan saved by polluting.  (Doc. 48, exh. D.)  That opinion, however, does not establish that Louisiana either performed Rowan's duties or paid for the cleanup costs of Rowan's pollution.  Louisiana also asserts that the trespass caused damage to the natural resources and environmental interests of the State of Louisiana. (Doc. 39 at ¶ 5.8.)  Other than arguing that water pollution is harmful, Louisiana does not provide any specific evidence of the actual environmental impact of Rowan's pollution.  Because it is unable to show actual harm, Louisiana also cannot establish any inconvenience or damages flowing from the trespass.

## IV.  Conclusion

Louisiana asserts that Rowan intentionally broke the law and polluted the waters in and around Louisiana and asks that Rowan be held accountable.   Rowan was, however, held accountable through a criminal prosecution resulting in millions of dollars in fines.  Though criminal penalties do not absolve civil liability, the elements of a criminal violation of the CWA are not the same as those for the civil causes of action, which must be met here.  Because Louisiana fails to show that Rowan's actions resulted in any actual harm or impoverishment to Louisiana, the Court must grant Rowan's motions for summary judgment.

Accordingly, it is hereby ORDERED that Defendant Rowan's motions for summary judgment are GRANTED.

SIGNED at Houston, Texas, this 28th day of July, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE